United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

KAPU GEMS, et al.,

Plaintiffs,

v.

DIAMOND IMPORTS, INC., et al.,

Defendants.

Case No. 15-cv-03531-MMC

**ORDER GRANTING IN PART AND DENYING IN PART COUNTERDEFENDANTS' MOTIONS TO DISMISS; AFFORDING COUNTERCLAIMANT LEAVE TO AMEND**

Re: Dkt. Nos. 49, 59

Before the Court are the following two motions: (1) "Motion to Dismiss Diamond Imports, Inc.'s Counterclaim for Damages," filed March 11, 2016, by plaintiffs/counterdefendants Kapu Gems and Kapu Gems Ltd., pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (hereinafter, "Kapu Gems Mot."), and (2) "Motion to Dismiss Diamond Imports, Inc.'s Counterclaim for Damages," filed May 31, 2016, by counterdefendant Kalpesh Vaghani ("Vaghani"), pursuant to Rules 12(b)(2) and 12(b)(4)-(6) of the Federal Rules of Civil Procedure (hereinafter, "Vaghani Mot."). Defendant/counterclaimant Diamond Imports, Inc. ("Diamond Imports") has filed opposition to each motion, to which counterdefendants have separately replied. Having read and considered the papers filed in support of and in opposition to the motions, the Court rules as follows.[1]

//

[1] By orders filed April 12, 2016, and August 9, 2016, the Court found the matters appropriate for decision on the parties' written submissions, vacated the hearings scheduled for April 15, 2016, and August 12, 2016, and took the matters under submission.

United States District Court
Northern District of California

**BACKGROUND**

Counterdefendants Kapu Gems and Kapu Gems Ltd. are diamond importers and exporters located, respectively, in the Republic of India and the Hong Kong Special Administrative Region of the People's Republic of China. (See First Amended Compl. ("FAC") ¶ 1, 7.) On July 31, 2015, Kapu Gems and Kapu Gems Ltd. filed a complaint naming as defendants Diamond Imports, a California-based diamond importer and retail supplier, and Yair Yachdav, the "sole shareholder and President of Diamond Imports." (See id. ¶¶ 2-3, 8.)[2] Thereafter, on February 19, 2016, Diamond Imports filed six counterclaims against Kapu Gems and Kapu Gems Ltd., as well as against counterdefendant Vaghani, a resident of the Republic of India and "partner" of Kapu Gems and Kapu Gems Ltd. (see Countercl. ¶¶ 4, 7). The counterclaims are the subject of the instant motions and contain the following allegations.

In either June or August 2012 (see id. ¶¶ 10, 23), Kapu Gems and Diamond Imports entered an agreement to form "Kapu Gems USA," a "joint venture" for "wholesaling diamonds to retailers and private buyers in the United States." (See id. ¶¶ 9-10.)[3] Under the agreement, Diamond Imports was to receive 4% of all gross sales it "curated for the venture." (See id. ¶ 23.) The sales would be executed as follows: "[t]he potential customer would call Diamond Imports . . . to negotiate the sale." (See id. ¶ 18.) "After Diamond Imports successfully completed the sale," Kapu Gems would "directly deliver[] the diamonds to the buyer"; in some cases, Diamond Imports would "wire[] the money to Kapu Gems," and in other cases, "the money would be directly deposited in Kapu Gems' account." (See id. ¶ 18.)

After the parties entered the above agreement, Kapu Gems, "[i]n or about 2013,"

---

[2] The FAC alleges claims for account stated, breach of contract, conversion, and replevin.

[3] Diamond Imports variously describes the agreement as an "oral partnership/joint venture" (id. ¶ 9), an "oral agreement, implied-in-fact contract" (id.), an "oral contract" (id. ¶ 23), and a "part oral, part written, implied-in-fact contract" (id. ¶¶ 26, 27).

United States District Court
Northern District of California

told Diamond Imports that Kapu Gems "needed to inspect" a "list" of Diamond Imports' customers and prices. (See id. ¶ 11.) Kapu Gems said it wished "to ensure that Diamond Imports could deliver as an experienced diamond seller," and "threatened to dissolve the venture" if Diamond Imports refused to share the information. (See id. ¶¶ 11, 13.) After receiving Kapu Gems' assurances that it would "never contact the customer[s] [on the list] without Diamond Imports' knowledge and consent," Diamond Imports shared the list with Kapu Gems (see id. ¶ 13) and, at some point, also "introduced" Kapu Gems, "[i]n furtherance of the . . . joint venture," to some of its "long standing" customers, including online jewelry retailers Blue Nile, Brilliant Earth, and Ritani (see id. ¶ 12).

In 2014, Diamond Imports discovered that Kapu Gems had, contrary to its assurances, "directly solicited Blue Nile, Brilliant Earth, and Ritani" without Diamond Imports' permission. (See id. ¶ 19.) In addition, "[s]everal other . . . customers" informed Diamond Imports that Kapu Gems had offered to sell diamonds to them "at a slightly lower price than what Diamond Imports could offer." (See id.) Diamond Imports' sales "dwindled as a result of Kapu Gems' solicitations" of said customers. (See id.)

Also "[i]n or about 2014," Kapu Gems "repudiat[ed] the existence of the venture[,] den[ied] Diamond Imports' interest in the venture assets, and . . . convert[ed] venture assets to [its] own use." (See id. ¶ 26). Although "[o]ver the span of the venture, Diamond Imports made $17 million in sales for the venture," Kapu Gems has "refused to pay" Diamond Imports its 4% share thereof, causing Diamond Imports to suffer "$1 - $5 million in damages." (See id. ¶¶ 24, 27.)

Based on the foregoing, Diamond Imports alleges, as against all counterdefendants, the following six counterclaims: (1) "Breach of Part Oral, Part Written, and Implied by Conduct Contract" (First Cause of Action), (2) "Breach of Fiduciary Duty" (Second Cause of Action), (3) "Constructive Fraud" (Third Cause of Action), (4) "Misappropriation of Trade Secrets" (Fourth Cause of Action), (5) "Interference with Business Relationship" (Fifth Cause of Action), and (6) "Unfair Competition" (Sixth Cause of Action).

United States District Court
Northern District of California

## LEGAL STANDARD

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party. See NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

## DISCUSSION

By the instant motions, counterdefendants argue that each of the six counterclaims is subject to dismissal as to all counterdefendants. Additionally, counterdefendants argue the counterclaims against Kapu Gems Ltd. and Vaghani should be dismissed for various reasons specific to said counterdefendants, which arguments the Court considers first.

**A. Alter Ego Liability: Kapu Gems Ltd. and Vaghani**

Counterdefendants argue that the counterclaims should be dismissed against Kapu Gems Ltd. and Vaghani because the factual allegations of wrongdoing underlying each counterclaim "solely concern Kapu Gems." (See Kapu Gems Mot. at 2:23.) Diamond Imports responds that its allegations against Kapu Gems apply equally to the other two counterdefendants, as Diamond Imports has alleged that Kapu Gems and Kapu Gems Ltd. are "alter ego[s]" of Vaghani, and that Kapu Gems and Kapu Gems Ltd. are a "common enterprise." (See Opp. to Kapu Gems Mot. at 15:2, 15:13; Opp. to Vaghani Mot. at 3:9, 3:14.)[4]

Under the alter ego doctrine, courts, "in narrowly defined circumstances," will pierce the "corporate veil," i.e., will "disregard the corporate entity and . . . hold the individual shareholders liable for the actions of the corporation," Mesler v. Bragg Mgmt. Co., 39 Cal. 3d 290, 300, 301 (1985); under similar circumstances, the corporate entity may be "disregarded" and "another corporation" may be held liable. Greenspan v. LADT, LLC, 191 Cal. App. 4th 486, 512 (2010) (emphasis omitted).

To pierce the corporate veil, Diamond Imports must prove two elements. First, it must show that "there is such a unity of interest and ownership between the corporation and the individual or organization controlling it that their separate personalities no longer exist." Communist Party v. 522 Valencia, Inc., 35 Cal. App. 4th 980, 993 (1995). Factors that can support the first element include the "commingling of funds and other assets," the "use of the same office or business location," the "employment of the same employees and/or attorney," and the "failure to maintain arm's length relationships among related entities." See Greenspan, 191 Cal. App. 4th at 512-13 (internal quotation and citation omitted).[5] Second, Diamond Imports must show that "there would be an

[4] The Court notes that the Counterclaim does not allege the corporate form of Kapu Gems or Kapu Gems Ltd. Diamond Imports has not, however, disputed that each entity has limited liability and that the corporate veil of Kapu Gems must be pierced in order for Vaghani and Kapu Gems Ltd. to be held liable for the actions of Kapu Gems.

[5] Other factors include "treatment by an individual of the assets of the corporation as his own," a "failure to maintain minutes or adequate corporate records," an "identical

inequitable result if the acts in question are treated as those of the corporation alone." Virtualmagic Asia, Inc. v. Fil-Cartoons, Inc., 99 Cal. App. 4th 228, 244-45 (2002) (internal quotation and citation omitted).

Counterdefendants contend that Diamond Imports has failed to allege facts in support of either said element, as to either Vaghani or Kapu Gems Ltd. As to Vaghani, the Court agrees that neither element is adequately pleaded. In support of the first element, unity of interest, Diamond Imports relies entirely on conclusory statements. (See, e.g., Countercl. ¶ 7 (alleging "there existed, a unity of interest and ownership between [c]ounterdefendants Kapu Gems, Kapu Gems LTD, and Kalpesh Vaghani"; alleging "Vaghani carried on his business, exercising complete control and dominance of such business").) Such allegations provide no facts as to the nature of Vaghani's ownership of either Kapu Gems or Kapu Gems Ltd. and constitute no more than "formulaic recitation[s]" of the legal factors for unity of interest. See Twombly, 550 U.S. at 555 (holding "formulaic recitation of the elements of a cause of action will not do"). Moreover, as to the second element, the Counterclaim contains no allegation that an inequitable result would occur if the corporate veil were not pierced to reach Vaghani, let alone any facts to support such a finding.

As to Kapu Gems Ltd., the Court, again, agrees that the first element is not adequately pleaded. Although the Counterclaim contains an allegation that "Kapu Gems and Kapu Gems Ltd. have two websites listing the same address for both entities, the same contact people for both entities, the same phone numbers for both entities, and the same manufacturing site for both entities" (see Countercl. ¶ 7), counterdefendants are correct that the balance of the allegations in support of the first element constitute

---

equitable ownership in the two entities," a "failure to adequately capitalize a corporation," the "use of a corporation as a mere shell," the "diversion of assets from a corporation by or to a stockholder or other person or entity," the "contracting with another with intent to avoid performance by use of a corporate entity as a shield against personal liability," and "formation and use of a corporation to transfer to it the existing liability of another person or entity." See Greenspan, 191 Cal. App. 4th at 512-13 (internal quotation and citation omitted).

United States District Court
Northern District of California

conclusory statements regarding the unity of interest of Kapu Gems and Kapu Gems Ltd. (see id. (alleging "Kapu Gems and Kapu Gems LTD. . . . are a common enterprise and have improperly commingled funds with each other, are alter egos of each other, and have otherwise engaged in other actions such that the debts and obligations of Kapu Gems are the debts and obligations of Kapu Gems LTD")), and Diamond Imports submits no authority that the above-referenced factual allegation, standing alone, will suffice.

As to the second element, the Court also agrees with counterdefendants that Diamond Imports has failed to allege an inequitable result will occur if the Court declines to pierce the corporate veil of Kapu Gems to reach Kapu Gems Ltd. The sole reference to an inequitable result in the Counterclaim is that "[a]dherence to the fiction of the separate existence of Kapu Gems and Kapu Gems Ltd. would . . . promote injustice in that Diamond Imports could only look to each entity for satisfaction of its damages. . . . Finding otherwise, would promote an inequitable result." (See Countercl. ¶ 7.) Alleged "difficulty in enforcing a judgment," however, cannot satisfy the second element, see VirtualMagic Asia, 99 Cal. App. 4th at 245 (internal quotation and citation omitted), in the absence of an adequate showing of "some conduct amounting to bad faith," see Associated Vendors, Inc. v. Oakland Meat Co., 210 Cal. App. 2d 825, 842 (1962) ("[I]t is not sufficient to merely show that a creditor will remain unsatisfied if the corporate veil is not pierced, and thus set up such an unhappy circumstance as proof of an 'inequitable result.'").

Accordingly, as alter ego is the sole proffered basis for liability of either Kapu Gems Ltd. or Vaghani, and Diamond Imports has failed to plead the two requisite elements as to either said counterdefendant, all counterclaims against Kapu Gems Ltd. and Vaghani are subject to dismissal.

**B. Personal Jurisdiction: Vaghani**

Vaghani, a citizen of the Republic of India, argues that the counterclaims asserted against him should be dismissed for the additional reason that Diamond Imports has failed to show he is subject to personal jurisdiction in California.

Diamond Imports, as "the party seeking to invoke jurisdiction," bears "the burden of establishing that jurisdiction exists." See Flynt Distributing Co., Inc. v. Harvey, 734 F.2d 1389, 1392 (9th Cir. 1984). "When a district court acts on a defendant's motion to dismiss [for lack of personal jurisdiction] without holding an evidentiary hearing, the plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss,"[6] i.e., "the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001) (internal quotation, citation, and alteration omitted). Where a "plaintiff's version of the facts" is "not directly controverted," that version "is taken as true for the purposes of a [Rule] 12(b)(2) motion to dismiss." Id.

Where, as here, "there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004) (citing Fed. R. Civ. P. 4(k)(1)(A)). California's long-arm jurisdictional statute "permits the exercise of jurisdiction to the extent authorized by the Constitution of the United States," and "[t]hus, the state and federal limits are coextensive." See Flynt Distributing Co., 734 F.2d at 1392.

"The basic federal rule is that the defendant must have certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." See id. Personal jurisdiction may be either general or specific. See Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1086 (9th Cir. 2000). Diamond Imports has not relied on a showing of general jurisdiction. The Court thus turns to the question of specific jurisdiction.

Courts "employ[] a three-prong test to determine whether a party has sufficient minimum contacts to be susceptible to specific personal jurisdiction." See Brayton Purcell LLP v. Recordon & Recordon, 575 F.3d 981, 985 (9th Cir. 2009). In particular, in

---

[6] No party has requested the Court conduct an evidentiary hearing.

determining whether to exercise specific jurisdiction, courts consider whether "(1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable." See Bancroft & Masters, Inc., 223 F.3d at 1086.

Diamond Imports argues that this Court may exercise personal jurisdiction over Vaghani because (1) Diamond Imports has alleged alter ego liability against him through Kapu Gems, which entity is undisputedly subject to this Court's jurisdiction,[7] and (2) as an individual, Vaghani has sufficient contacts with California to be subject to specific jurisdiction in this state. The Court addresses each said theory in turn.

**1. Alter Ego**

As noted, Diamond Imports first relies on its above-referenced alter ego theory to establish personal jurisdiction over Vaghani. In particular, Diamond Imports argues that, because it has alleged that the corporate veil of Kapu Gems should be pierced to reach Vaghani, it has also shown personal jurisdiction over Vaghani. Although Diamond Imports is correct that personal jurisdiction over a defendant may be premised on a showing that said defendant is the alter ego of a second defendant who has minimum contacts with the forum, see Flynt Distributing Co., 734 F.2d at 1393, Diamond Imports acknowledges that, before the Court may "disregard the corporate entity for jurisdictional purposes," it must "make out a prima facie case under appropriate substantive law to establish alter ego liability." (See Opp. to Vaghani Mot. at 7:15-16); Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 591 (9th Cir. 1996) (rejecting argument that "GBL's domination and control over Keystone" allowed Court to exercise personal jurisdiction over GBL, where plaintiff "failed to make out a prima facie case that Keystone

[7] In its motion to dismiss, Kapu Gems has not argued that this Court lacks personal jurisdiction over it.

United States District Court
Northern District of California

was GBL's alter ego"). As discussed above, Diamond Imports has not alleged facts sufficient to support a finding that the corporate entity of Kapu Gems should be disregarded, and, as Vaghani points out, Diamond Imports, in submitting declarations and exhibits in support of personal jurisdiction, does not even attempt to make a prima facie showing to that effect.[8] Accordingly, alter ego liability does not support the exercise of personal jurisdiction over Vaghani.

**2. Minimum Contacts**

In its opposition, Diamond Imports relies on certain activities of Vaghani, either occurring in or otherwise involving California, to show that (1) Vaghani has sufficient contacts to have purposefully availed himself of said forum, and (2) the instant counterclaims arose out of those contacts.[9] That conduct includes visiting San Francisco, California, for the purpose of setting up the alleged "joint venture" that is the subject of several of the counterclaims, as well as for the purpose of meeting with one of the customers that Diamond Imports alleges counterdefendants unlawfully solicited. (See Foreman Decl. Ex. 4 ¶¶ 4, 6; Ex. 5.)

In addressing such conduct in his reply, Vaghani does not argue that the contacts in question are insufficient to support either a finding of purposeful availment or a finding that Diamond Imports' claims against him arise out of such conduct. Rather, Vaghani contends the "fiduciary shield doctrine" precludes jurisdiction because, in engaging in the

---

[8] Rather than attempt to "make a prima facie showing of the alter ego relationship" by, for example, showing that Vaghani has "converted the assets of [Kapu Gems and Kapu Gems Ltd.] for [his] own use and dealt with them as if they were one," see Flynt Distributing Co., 734 F.2d at 1393, said submissions, as discussed in the following section, only tend to show that Vaghani engaged in activities in California.

[9] Diamond Imports has submitted declarations and other evidence to show Vaghani conducted such activities. (See Foreman Decl. Exs. 3-7.) In his reply, Vaghani has moved to strike those exhibits, arguing that Diamond Imports may not rely on materials outside the pleadings on a motion to dismiss. To the extent that Vaghani's motion is brought pursuant to Rule 12(b)(2) for lack of personal jurisdiction, rather than pursuant to Rule 12(b)(6) for failure to state a claim, the Court may rely on such material in deciding the motion. See Doe, 248 F.3d at 922 (holding "court may consider evidence" on motion to dismiss under Rule 12(b)(2)). Accordingly, Vaghani's motion to strike is hereby DENIED.

United States District Court
Northern District of California

above-referenced activities, he was "acting in his capacity as a representative of Kapu Gems and/or Kapu Gems Ltd., not in his personal capacity." (See Vaghani Reply at 6:9-11.)

Although the fiduciary shield doctrine "prevents the exercise of personal jurisdiction over an individual whose activities were performed solely in a corporate or employment capacity," the doctrine, to the extent it remains viable, see Goehring v. Superior Court of San Diego, 62 Cal. App. 4th 894, 906 (1998) (noting California courts have suggested "[fiduciary shield] doctrine is inconsistent with California's long-arm statute"), only shields corporate officers and does not apply to partners, see id. (holding "general partner who is allegedly liable on substantive grounds may [not] insulate himself or herself from jurisdiction merely because that partner has acted solely in his or her partnership capacity"). Here, Vaghani admits he is a "partner of Kapu Gems." (See Vaghani Decl. ¶ 2.) Consequently, his reliance on the fiduciary shield doctrine is unavailing.

Accordingly, as Vaghani has not challenged Diamond Imports' showing as to minimum contacts and the fiduciary shield doctrine is inapplicable, Vaghani has failed to show the Counterclaim is subject to dismissal for lack of personal jurisdiction.

**C. Insufficient Process and Improper Service: Vaghani**

Vaghani next argues that the counterclaims against him should be dismissed pursuant to Rules 12(b)(4) and 12(b)(5) of the Federal Rules of Civil Procedure, for the reason that Diamond Imports failed to serve him in a manner that complies with the requirements for service set forth in Rule 4 of the Federal Rules of Civil Procedure.

First, Vaghani, who is, as noted, a resident of the Republic of India, argues that he was not served in compliance with the terms of the Hague Service Convention.[10]

---

[10] The Hague Service Convention is a multilateral treaty, ratified by the United States and thirty-one other countries, that "provide[s] a . . . way to serve process abroad," assures "that defendants sued in foreign jurisdictions . . . receive actual and timely notice of suit," and "facilitate[s] proof of service abroad." See Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 698 (1988).

Diamond Imports does not dispute that its service of Vaghani did not so comply, but argues that it nonetheless has accomplished service under Rule 4(e)(2)(A) by personally delivering the summons and Counterclaim to Vaghani.

Where, as here, however, a claimant seeks to serve an individual "at a place not within any judicial district of the United States," Rule 4(f), not Rule 4(e), applies. See Fed. R. Civ. P. 4(f); Fed. R. Civ. P. 4(e) (providing for "serv[ice] in a judicial district of the United States"). Pursuant to Rule 4(f), such individual must be served "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." See Fed. R. Civ. P. 4(f)(1); see also Volkswagenwerk Aktiengesellschaft, 486 U.S. at 705 (noting "compliance with the Convention is mandatory in all cases to which it applies"). Vaghani asserts that "India is a party to the Hague Convention" and "does not permit" any method of international service of process "other than through the Central Authority." (See Vaghani Mot. at 11:2, 11:13.) Diamond Imports does not argue to the contrary, nor does it dispute Vaghani's assertion that he was not served through the Central Authority. (See Devendra Decl. ¶ 3.) Consequently, Diamond Imports has failed to show compliance with Rule 4(f).

Second, Vaghani asserts that the summons with which he was purportedly served is inadequate because it "does not state the name and address of Diamond Imports' attorney, is not signed [by the Clerk of Court] and does not bear the court's seal." (See Vaghani Mot. at 9:20-21); Fed. R. Civ. P. 4(a)(1) (providing "summons must," inter alia, "state the name and address of the plaintiff's attorney," "be signed by the clerk," and "bear the court's seal"). Vaghani has submitted a copy of the summons he received, which document, as Vaghani states, lacks the name and address of Diamond Imports' attorney, the signature of the Clerk, and the seal of the Court. (See Vaghani Decl. Ex. 1.) Diamond Imports has not offered any evidence to the contrary, and, consequently, has failed to show compliance with Rule 4(a).

As a result of the above-noted deficiencies, Diamond Imports has failed to show

Vaghani has been properly served. Where, as here, a claimant is unable to satisfy its burden of proving valid service, the Court has discretion to dismiss the action. See Stevens v. Sec. Pac. Nat'l Bank, 538 F.2d 1387, 1389 (9th Cir. 1976). Accordingly, the counterclaims asserted against Vaghani will be dismissed.[11]

**D. Conclusion as to Kapu Gems Ltd. and Vaghani**

To the extent counterdefendants seek dismissal of all counterclaims against Vaghani and Kapu Gems Ltd., the Court, in light of the above-noted deficiencies as to the allegations of alter ego liability against both said parties and service of Vaghani, will grant the motions to dismiss.

**E. Failure to State a Claim: All Counterdefendants**

Counterdefendants also argue that each of the six asserted counterclaims fails to state a claim for relief, and, consequently, is subject to dismissal with respect to all counterdefendants. The Court considers the sufficiency of each counterclaim in turn.

**1. First Cause of Action: Breach of Part Oral, Part Written, and Implied by Conduct Contract**

"A cause of action for breach of contract requires pleading of a contract, plaintiff's performance or excuse for failure to perform, defendant's breach and damage to plaintiff resulting therefrom." McKell v. Wash. Mut., Inc., 142 Cal. App. 4th 1457, 1489 (2006). Counterdefendants argue Diamond Imports has failed to plead the first, third, and fourth said elements.

**a. Sufficiency of the Allegations as to the Existence of a Contract**

Counterdefendants identify two asserted deficiencies in Diamond Imports' pleading of the existence of a contract; specifically, counterdefendants argue (1) it cannot be determined which terms of the alleged contract were agreed to in writing, which were

---

[11] Under some circumstances, a Court, upon a finding that a claimant has failed to serve valid process, may exercise its discretion to quash service rather than dismiss the action. See id. Here, however, as discussed above, the Counterclaim is subject to dismissal in its entirety as to Vaghani on other grounds, thus warranting dismissal on this ground as well.



United States District Court
Northern District of California

agreed to orally, and which were agreed to by implication, and (2) Diamond Imports has failed to allege who represented the parties in executing the contract.

As to counterdefendants' first argument, the Court agrees that the contract claim is subject to dismissal for the reason that Diamond Imports has failed to identify which terms were oral, which terms were written, and which terms are implied, nor is the form by which the terms were allegedly agreed upon otherwise apparent.[12] See Cal. Code Civ. Procedure § 430.10(g) (providing claim for breach of contract is subject to dismissal if "it cannot be ascertained from the pleading whether the contract is written, is oral, or is implied by conduct"). For example, although Diamond Imports alleges that "potential customer[s] would call Diamond Imports at its San Francisco office to negotiate the sale," and "Diamond Imports [would] wire the money to Kapu Gems" or "directly deposit[]" the money "in Kapu Gems' account" (see Countercl. ¶ 18), it is unclear whether such allegations purport to describe terms expressly agreed upon by the parties in writing or orally, or terms impliedly arising from the parties' conduct, or are merely facts describing the behavior of the parties after the agreement was formed.

As to counterdefendants' second argument, that Diamond Imports has failed to plead the terms of the alleged contract because it has not "allege[d] who from Diamond Imports and/or Kapu Gems supposedly agreed to enter into the contract and whether such person was authorized to do so" (see Kapu Gems Mot. at 7:13-16),[13] the Court is unpersuaded. Counterdefendants cite no authority holding that Diamond Imports must allege the identities of the individuals who represented each party in executing the

[12] Counterdefendants also argue that Diamond Imports' allegation that the contract was partially implied-in-fact is deficient because Diamond Imports has "not alleged a course of conduct from which a promise may be implied." (See Kapu Gems Mot. at 8:3.) It is not clear from the pleading, however, which, if any, terms Diamond Imports is alleging are implied.

[13] While counterdefendants also argue that the allegation that Diamond Imports has "performed all conditions, covenant[s] and promises it was required to perform under the contract . . . merely parrots [a] legal element" and thus is conclusory, such argument was made for the first time in the reply briefs. (See Kapu Gems Reply at 2:18-22; Vaghani Reply at 8:10-17.) Accordingly, the Court has not addressed it herein.

United States District Court
Northern District of California

alleged contract. To the contrary, as counterdefendants acknowledge, a contract may be pleaded by its legal effect, which requires "alleg[ing] the substance of its relevant terms." See McKell, 142 Cal. App. 4th at 1489 (internal quotation and citation omitted). Diamond Imports has alleged that the parties agreed that Diamond Imports would "curate[]" sales on behalf of Kapu Gems USA and, in return, was entitled to receive 4% of such gross sales. (See Countercl. ¶ 23.) By such allegations, Diamond Imports has adequately pled the alleged contract's "relevant terms"; as the identities of the parties' representatives are not terms, relevant or otherwise, of the contract, Diamond Imports was not required to plead them.

**b. Sufficiency of the Allegations as to Breach**

Diamond Imports alleges four breaches, specifically, that Kapu Gems (1) "repudiat[ed] the existence of the venture," (2) "den[ied] Diamond Imports' interest in the venture assets," (3) "convert[ed] venture assets to [its] own use," and (4) "refused to pay Diamond Imports its 4% share of the gross sales." (See Countercl. ¶¶ 23-26.) Although counterdefendants do not contest the adequacy of the fourth claimed breach, counterdefendants point out, and the Court agrees, that the first, second, and third allegations are inadequate to plead breach, for the reason that Diamond Imports has not adequately pleaded the existence of a joint venture between the parties.

A joint venture is "an undertaking by two or more persons jointly to carry out a single business enterprise for profit." April Enter., Inc. v. KTTV, 147 Cal. App. 3d 805, 819 (1983) (internal quotation and citation omitted). "The elements necessary for [the] creation [of a joint venture] are: (1) joint interest in a common business; (2) with an understanding to share profits and losses; and (3) a right to joint control." Id. Here, Diamond Imports has alleged an understanding to share profits by alleging it was entitled to 4% of the gross sales; Diamond Imports has alleged no facts, however, showing the parties had a joint interest in Kapu Gems USA, the parties agreed to share losses sustained by Kapu Gems USA, or the parties each had a right of control over Kapu Gems USA.

Although not clearly stated, Diamond Imports appears to argue that it is not required to plead any of the above elements other than the sharing of profits. Such position is, however, contrary to California law. See, e.g., Simmons v. Ware, 213 Cal. App. 4th 1035, 1056 (2013) (holding "joint participation in the management and control of the business" is "[a]n essential element" of a joint venture; further holding "[a]bsent such right, the mere fact that one party is to receive benefits in consideration of services rendered or for capital contribution does not, as a matter of law, make him a . . . joint venturer") (internal quotation and citation omitted).

Accordingly, to the extent Diamond Imports is relying on a breach of an alleged joint-venture contract, the Court finds the allegations are inadequate. Nevertheless, as counterdefendants have not contested the adequacy of the above-referenced fourth breach, the counterclaim for breach of contract is not subject to dismissal for failure to allege breach.

**c. Sufficiency of the Allegations as to Damages**

Diamond Imports alleges that, as a result of Kapu Gems' failure to pay Diamond Imports its share, Diamond Imports has "suffered $1 - $5 million in damages." (See Countercl. ¶ 27.) As counterdefendants point out, however, said figure is inconsistent with Diamond Imports' allegation that it made a total of $17 million in sales on behalf of Kapu Gems USA, as 4% of $17 million is only $680,000.[14] Accordingly, Diamond Imports fails to allege facts in support of its claimed damages.

Relying on Isuzu Motors Ltd. v. Consumers Union of United States, Inc., 12 F. Supp. 2d 1035 (C.D. Cal. 1998), counterdefendants further argue that "the claim for breach of contract should be dismissed as a matter of law" because Diamond Imports has not "specifically indicated . . . special damages." (See Kapu Gems Mot. at 8:12-15.) Although Diamond Imports in response notes that Isuzu Motors concerned the pleading

[14] Although Kapu Gems has not argued that Diamond Imports has failed to allege any harm resulting from the other breaches, the Court notes that such failure also warrants dismissal.

requirements for a trade libel claim, see Isuzu Motors Ltd., 12 F. Supp. 2d at 1046-47, the same rule for pleading special damages also applies in the context of contract law, see, e.g., Colvig v. RKO Gen., Inc., 232 Cal. App. 2d 56, 69 (1965) (holding "[d]amages which may be said to be the normal and natural result of the breach complained of may be denominated general damages and pleaded accordingly, while those suffered as a consequence, though not necessarily the certain result of the breach, must be pleaded specially") (internal quotation and citation omitted).

Nonetheless, Diamond Imports' failure to plead special damages does not preclude its claim. A breach of contract claimant may seek, but is not required to seek, recovery of special damages, and failure to plead "[s]pecial damage" merely prevents a claimant from being "permitted to give evidence of it at the trial." See id. at 69. As a result, Diamond Imports' counterclaim for breach of contract is not subject to dismissal on the ground that Diamond Imports failed to plead special damages.

**d. Conclusion as to Breach of Contract**

In light of the above-noted deficiencies, namely, Diamond Imports' failure to identify the form of the terms of the alleged contract and failure to allege facts to support the amount of damages it has claimed, the First Cause of Action is subject to dismissal as to all counterdefendants.

**2. Second Cause of Action: Breach of Fiduciary Duty**

"The elements of a cause of action for breach of fiduciary duty are: (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach." See Gutierrez v. Girardi, 194 Cal. App. 4th 925, 932 (2011) (internal quotation and citation omitted).

The parties dispute whether, under the facts alleged, counterdefendants owed Diamond Imports a fiduciary duty. "Whether a fiduciary duty exists is generally a question of law." Marzec v. Calif. Pub. Emp. Retirement Sys., 236 Cal. App. 4th 889, 915 (2015). "Before a person can be charged with a fiduciary obligation, he [1] must either knowingly undertake to act on behalf and for the benefit of another, or [2] must enter into

a relationship which imposes that undertaking as a matter of law." City of Hope Nat'l Med. Ctr. v. Genentech, Inc., 43 Cal. 4th 375, 386 (2008) (internal quotation and citation omitted).

A "joint venture" is, under the second alternative set forth in City of Hope, one type of relationship that imposes a "fiduciary obligation to act on behalf of and for the benefit of another as a matter of law," id. (internal quotation and citation omitted), and, as currently alleged, the counterclaim for breach of fiduciary duty relies exclusively on the existence of a joint venture. (See Countercl. ¶ 29 ("Kapu Gems [has] breached the duty of care imposed by Corporations Code § 16404(c) to the venture and to [c]ounterclaimants.")[15] For the above-stated reasons, however, Diamond Imports has failed to allege a joint venture, and, as a result, has failed to allege a relationship between the parties that would give rise to a fiduciary duty as a matter of law.

Despite the Counterclaim's exclusive reliance on the existence of a joint venture in alleging breach of fiduciary duty, Diamond Imports, in apparent reliance on the first of the above two alternatives, argues "[a] fiduciary duty also exists in the context of a confidential relationship." (See Opp. to Kapu Gems Mot. at 6:15, 7:23; Opp. to Vaghani Mot. at 14:22.) Under California law, however, transmission of confidential information, without more, is insufficient to give rise to a fiduciary relationship, because information may "be transmitted in the course of arms length negotiations between businessmen who can profit from its exploitation." See Davies v. Krasna, 14 Cal. 3d 502, 510, 511 (1975) (holding, where parties were "engaged in the business of selling and exploiting ideas for movies," defendant may have had "a duty to refrain from unauthorized disclosure of the idea, but . . . [did not have] fiduciary-like duties that arise from a confidential relationship"); see also City of Hope, 43 Cal. 4th at 391, 392 (noting "one party entrust[ing] its affairs, interests or property to another . . . standing alone is [not]

---

[15] See Cal. Corporations Code § 16404(a) (providing "fiduciary duties a partner owes to the partnership and the other partners are the duty of loyalty and the duty of care set forth in subdivisions (b) and (c)").

United States District Court
Northern District of California

determinative of the existence of a fiduciary relationship"; further noting "mere receipt of confidential information does not create fiduciary duty") (citing Chodos, The Law of Fiduciary Duties, § 1:21).

Accordingly, the Second Cause of Action is subject to dismissal as to all counterdefendants, as Diamond Imports has alleged neither a joint venture, nor an adequate factual basis to support a finding that any counterdefendant undertook to act on behalf of Diamond Imports.

**3. Third Cause of Action: Constructive Fraud**

"Constructive fraud allows conduct insufficient to constitute actual fraud to be treated as such where the parties stand in a fiduciary relationship." Estate of Gump v. Gump, 1 Cal. App. 4th 582, 601 (1991). A claim for "[c]onstructive fraud arises on a breach of duty by one in a confidential or fiduciary relationship to another which induces justifiable reliance by the latter to his prejudice." Id. (quoting Cal. Civ. Code § 1573) (emphasis omitted).

Relying on the existence of a fiduciary relationship arising out of the parties' "venture agreement," Diamond Imports alleges that Kapu Gems committed constructive fraud by "excluding Counterclaimants Diamond Imports from their interest in the venture," and "by securing an advantage over Counterclaimants by misleading Counterclaimants to their prejudice." (See Countercl. ¶ 34.)

Such allegations fail at the outset because, for the above-stated reasons, Diamond Imports has not alleged a fiduciary relationship between counterdefendants and Diamond Imports. Moreover, as counterdefendants point out, the constructive fraud counterclaim is subject to dismissal for the additional reason that it does not comply with Rule 9(b) of the Federal Rules of Civil Procedure, which imposes heightened pleading requirements for "[a]verments of fraud," and mandates that "the alleged fraud must be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." See Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation, citation, and

alteration omitted); Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC, 634 F. Supp. 2d 1009, 1021 (N.D. Cal. 2007) (holding Rule 9(b) applies to claim for constructive fraud). In particular, such averments must "be accompanied by 'the who, what, when, where, and how' of the misconduct charged." See id. (internal citation omitted). Here, the above-referenced allegations are so vague that it is not possible to discern, even at a broad level, what conduct Diamond Imports is relying on to show fraud, much less any specific information regarding the particular individual(s) who committed the alleged wrongful acts, or the time or place at which, or manner in which, said wrongful acts occurred.

Accordingly, the Third Cause of Action is subject to dismissal as to all counterdefendants.

**4. Fourth Cause of Action: Misappropriation of Trade Secrets**

As noted, Diamond Imports alleges that Kapu Gems misappropriated trade secrets by "convincing" Diamond Imports to provide Kapu Gems with a copy of Diamond Imports' customer and pricing list, assuring Diamond Imports that Kapu Gems "would never contact the customer[s] without Diamond Imports' knowledge and consent," and then proceeding to "directly contact[] Diamond Imports' customers and offer[] to sell diamonds to them at a slightly lower price . . . without Diamond Imports' knowledge or consent." (See Countercl. ¶¶ 41-42.)

Counterdefendants first argue that said allegations fail to state a claim for misappropriation of trade secrets, for the reason that Diamond Imports has not kept its customer and pricing list confidential. A customer list qualifies as a "'[t]rade secret' if it '[d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use' and '[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy'." See Reeves v. Hanlon, 33 Cal. 4th 1140, 1155 (2004) (quoting Cal. Civ. Code § 3426.1(d)). Here, in support of dismissal, counterdefendants point out that the Counterclaim discloses some of the information on

Diamond Imports' customer and pricing list, specifically, the identities of "three of [Diamond Imports'] allegedly largest customers: Blue Nile, Brilliant Earth, and Ritani." (See Kapu Gems Mot. at 12:22.) The Court is not persuaded. Even assuming, arguendo, that a post-misappropriation disclosure in a pleading alleging such misappropriation would preclude a finding of confidentiality, counterdefendants here do not contend Diamond Imports has disclosed the pricing information for said three customers, or the names or pricing information of other customers, nor do counterdefendants contend that such information is generally known. Consequently, counterdefendants have not shown that the list, considered as a whole, is not confidential. See Morlife, Inc. v. Perry, 56 Cal. App. 4th 1514, 1521 (1997) (rejecting defendant's argument that, because "identity of prospective customers . . . [was] generally known," customer list was not trade secret, where list included "names, addresses, . . . contact persons, [and] pricing information").

Counterdefendants next argue that they did not misappropriate the customer and pricing list, but, rather, that Diamond Imports voluntarily shared the list with them. Again, the Court is unpersuaded. For purposes relevant here, a party misappropriates a trade secret when it "use[s] . . . a trade secret of another without express or implied consent" and "[a]t the time of . . . use, knew or had reason to know that his or her knowledge of the trade secret was acquired under circumstances giving rise to a duty to . . . limit its use." See Cal. Civ. Code § 3426.1(b)(2)(B)(ii). Diamond Imports has alleged that Kapu Gems assured Diamond Imports that it would not use the list to solicit business from Diamond Imports' customers, which allegation would support a finding that Kapu Gems acquired the list with "reason to know that [its] knowledge of the trade secret was . . . [a]cquired under circumstances giving rise to a duty to" not use the list to solicit business. See id. Diamond Imports has further alleged that, without first obtaining Diamond Imports' authorization, Kapu Gems solicited sales from Diamond Imports' customers, i.e., it "use[d]" the list. See id. Such allegations state a claim for misappropriation of trade secrets under the above-referenced statutory provision. See id.; see also Morlife, Inc., 56

Cal. App. 4th at 1524 (noting California courts "have equated acts of solicitation [of customers] with . . . 'misappropriation' of protected information").

Accordingly, counterdefendants have failed to show the Fourth Cause of Action is subject to dismissal.

**5. Fifth Cause of Action: Interference with Business Relationship**

"The five elements for intentional interference with prospective economic advantage," i.e., interference with a business relationship, are "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." See Youst v. Longo, 43 Cal. 3d 64, 71 n.6 (1987).

Diamond Imports alleges that it had relationships with "customers [who] consistently purchased diamonds from Diamond Imports and Yachdav on a revolving cycle," and that "[m]any" of these relationships have been in existence "for the past 30+ years." (See Countercl. ¶ 46.) Diamond Imports further alleges that Kapu Gems was aware of said relationships through the parties' "venture," as well as "Kalpesh Vaghani's close working relationship with Diamond Imports' president," and "Kapu Gems['] insistence that Diamond Imports share its customer and price list." (Id. ¶ 47.) Diamond Imports alleges Kapu Gems interfered with said relationships when it "circumvented Diamond Imports and solicited Blue Nile, Brilliant Earth, Ritani, and other customers." (Id. ¶ 48.) According to Diamond Imports, "its sales dwindled as a result of Kapu Gems' solicitations," and it has "los[t] a majority of its long term customers." (Id. ¶¶ 48-49.)

Counterdefendants contend such allegations fail to state a claim for interference with prospective economic advantage, for the reason that Diamond Imports has not pled "lost contracts, failed negotiations, or other concrete facts" that would show an actual disruption of any existing relationship with a customer. (See Kapu Gems Mot. at 15:4-6.) As an initial matter, the Court is unpersuaded that Diamond Imports must allege an

existing contract or contract negotiations in order to allege an existing business relationship, as such relationship "need not be a contractual relationship," see Roth v. Rhodes, 25 Cal. App. 4th 530, 546 (1994), and, although an existing business relationship may be shown by ongoing negotiations, see Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1151 (9th Cir. 2008), such circumstance is but one "example" of a sufficient showing, see id.

Nevertheless, "an existing relationship is required," see id., and the Court finds Diamond Imports has failed to allege it had an existing relationship with any of the customers at issue. To show such an existing relationship, courts "requir[e] proof the business relationship contained the probability of future economic benefit to the plaintiff." Westside Cntr. Assoc. v. Safeway Stores 23, Inc., 42 Cal. App. 4th 507, 522 (1996) (internal quotation and citation omitted) (emphasis in original). Interference with a plaintiff's relationship with a "hypothetical" buyer, see id., or a "potential" customer is insufficient to support a claim of interference with prospective economic advantage because the likelihood of future benefit is too "speculative." See Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc., 2013 WL 5694452, at *20 (N.D. Cal. 2013) (internal quotation and citation omitted).

Diamond Imports' allegation that the customers at issue "consistently purchased diamonds from Diamond Imports . . . on a revolving cycle throughout the years" (see Countercl. ¶ 46) is, in essence, an allegation that said customers have purchased diamonds from Diamond Imports in the past. Such allegations are inadequate to show a probability of future benefit to Diamond Imports because, if Diamond Imports must win the business of its prior customers every time it makes a sale to them, such customers only amount to potential future customers. See New Kids on the Block v. News Am. Publ'g, Inc., 971 F.2d 302, 310 (9th Cir. 1992) ("[I]t is no tort to beat a business rival to prospective customers.") (internal quotation and citation omitted). In order to allege a probability of future economic benefit from its prior customers, Diamond Imports must allege additional facts showing that said customers were regular customers with whom

Diamond Imports had an ongoing business relationship, and to whom Diamond Imports had historically made sales with a consistency that could be expected to continue, due, for example, to the nature of the business. See, e.g., Rickards v. Canine Eye Registration Foundation, Inc., 704 F.2d 1449, 1456 (9th Cir. 1983) (characterizing veterinarians' provision of services to "regular clients" as "ongoing business relationship").

Accordingly, the Fifth Cause of Action is subject to dismissal as to all counterdefendants, as Diamond Imports has failed to allege facts to show a probability of future economic benefit from its prior customers.[16]

**6. Sixth Cause of Action: California's Unfair Competition Law ("UCL")**

"California's UCL prohibits unfair competition by means of any unlawful, unfair or fraudulent business practice." See Birdsong v. Apple, Inc., 590 F.3d 955, 959 (9th Cir. 2009) (citing Cal. Bus. & Prof. Code §§ 17200-17210). "Each prong of the UCL is a separate and distinct theory of liability." See id.

Counterdefendants first argue that Diamond Imports has failed to state a claim for relief under the UCL because the Counterclaim fails to provide notice of the specific conduct on which the Sixth Cause of Action is based. The Court agrees. A UCL claimant must identify the "particular section of the statutory scheme which was violated" and "state with reasonable particularity the facts supporting the statutory elements of the violation." See Khoury v. Maly's of Calif., Inc., 14 Cal. App. 4th 612, 619 (1993). In its opposition, Diamond Imports states it is relying on, "among other things," the facts that

[16] Counterdefendants also contend Diamond Imports was required to plead "how or when" it "discovered" that it had lost sales, and "the dollar amount by which Diamond Imports' sales 'dwindled.'" (See Kapu Gems Mot. at 15:11-14.) As counterdefendants have cited no authority, and the Court has found none, holding a claimant must plead such details in order to state a claim, the Court does not find the Fifth Cause of Action is subject to dismissal on said basis. Further, contrary to counterdefendants' argument that Diamond Imports has not "identif[ied] the cause of [the alleged] reduction in sales," Diamond Imports has alleged that the "proximate cause" is "Kapu Gems's circumvention of Diamond Imports to solicit Diamond Imports' customers with slightly lower priced diamonds." (See Countercl. ¶ 49.)

United States District Court
Northern District of California

support its counterclaims for violations of "California Civil Code § 1573 (constructive fraud), California Corporations Code § 16404(c) (breach of fiduciary duty) and California Civil Code § 3426 et seq. (misappropriation of trade secrets)." (See Opp. to Kapu Gems Mot. at 13:24-14:1.) Any such predicate, however, is not made clear from the allegations in support of the Sixth Cause of Action, which incorporates by reference the entirety of the factual allegations made in the Counterclaim.[17] Accordingly, the Sixth Cause of Action is subject to dismissal.

In addition, counterdefendants argue that, to the extent Diamond Imports asserts a claim under the fraudulent business practice prong of the UCL, Diamond Imports has failed to satisfy the above-referenced heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.[18] In its opposition, Diamond Imports contends it has adequately alleged fraudulent conduct under Rule 9(b) by alleging that "[c]ounterdefendants had represented that they would not contact the customers without Diamond Import['s] knowledge and consent," and subsequently engaged in the very conduct in which they said they would not engage, i.e., "directly solicit[ing] customers without Diamond Imports' knowledge." (See Opp. to Kapu Gems Mot. at 13:20-23.)

The Court finds Diamond Imports has failed to plead fraudulent conduct under the UCL with the requisite particularity. See Vess, 317 F.3d at 1106 (holding allegations sounding in fraud must "be accompanied by 'the who, what, when, where, and how' of the misconduct charged") (internal quotation and citation omitted). Diamond Imports has not identified the particular individuals who "represented" that they would not solicit Diamond Imports customers or who undertook the alleged soliciting. See U.S. ex rel. Lee

---

[17] Moreover, the Court has found the allegations as to constructive fraud and breach of fiduciary duty insufficient to state a claim.

[18] The heightened pleading requirements of Rule 9(b) apply to claims under the UCL only to the extent such claims are based on fraudulent conduct. See Vess, 317 F.3d at 1103-04 (holding, where "fraud is not a necessary element of a claim" asserted by plaintiff, but plaintiff nonetheless relies on "some fraudulent" conduct "in support of" said claim, "only the allegations of fraud are subject to Rule 9(b)'s heightened pleading requirements").

United States District Court
Northern District of California

v. SmithKline Beecham, 245 F.3d 1048, 1051 (9th Cir. 2001) (holding plaintiff's allegation that defendant "knowingly . . . changed control numbers [on various tests] to wrongfully represent . . . the laboratory results" failed to satisfy Rule 9(b), where plaintiff did not "identify the . . . employees who performed the tests"). Further, Diamond Imports has not alleged where the parties were when the representations were made, and has not alleged whether they were made in person or by some other mode of communication. Accordingly, to the extent the Sixth Cause of Action is based on the fraudulent business practice prong of the UCL, it is subject to dismissal for the additional reason that the allegations are insufficient to meet the pleading requirements of Rule 9(b).[19]

**F. Leave to Amend**

Although counterdefendants seek dismissal without leave to amend, the Court will afford Diamond Imports leave to amend each dismissed counterclaim, as none of the deficiencies noted above appear to be of the type that are incapable of amendment, see Balistreri, 901 F.2d at 701 (holding leave to amend "should be granted if it appears at all possible that the plaintiff can correct the defect") (internal quotation and citation omitted), and the Court has not ruled previously on the sufficiency of the allegations made in support thereof, see Allen v. City of Beverly Hills, 911 F.2d 367, 373 (9th Cir. 1990) (listing previous amendment among factors considered by court in determining whether to afford leave to amend).

**CONCLUSION**

1. As against Kapu Gems Ltd. and Vaghani, the motions to dismiss are hereby

[19] Although counterdefendants also argue that Diamond Imports has failed to state a UCL claim under the unfairness prong because "Diamond Imports does not engage in the type of balancing test that is required under [that] prong" (see Kapu Gems Mot. at 16:22-24 (citing Baba v. Hewlett Packard Co., 2010 WL 2486353 (N.D. Cal. 2010)), counterdefendants cite no authority for the proposition that a claimant is required to perform such an analysis in its pleading. Accordingly, the Sixth Cause of Action is not subject to dismissal on that basis. Additionally, to the extent counterdefendants initially sought dismissal of Diamond Imports' prayer for treble damages, the Court notes that Diamond Imports has "withdraw[n] this request." (See Opp. to Kapu Gems Mot. at 13 n.3.)

GRANTED, and the Counterclaim is hereby DISMISSED in its entirety as to said counterdefendants.

2. As against Kapu Gems, to the extent counterdefendants seek dismissal of the First, Second, Third, Fifth, and Sixth Causes of Action, the motions to dismiss are hereby GRANTED, and said counterclaims are hereby DISMISSED as to said counterdefendant; to the extent counterdefendants seek dismissal of the Fourth Cause of Action, the motions to dismiss are hereby DENIED.

3. If Diamond Imports wishes to amend its Counterclaim to cure the above-noted deficiencies, Diamond Imports shall file its First Amended Counterclaim no later than August 26, 2016. In addition, should Diamond Imports again name Vaghani as a counterdefendant, Diamond Imports must re-serve him with the summons and amended pleading.[20]

4. In the event Diamond Imports does not amend within the time provided, the Counterclaim will proceed only as to the Fourth Cause of Action, and only as against Kapu Gems.

**IT IS SO ORDERED.**

Dated: August 12, 2016

MAXINE M. CHESNEY
United States District Judge

United States District Court
Northern District of California

[20] At this juncture, the Court has not set a deadline for such service. See Fed. R. Civ. P. 4(m) (providing 90-day time limit for service "does not apply to service in a foreign country under Rule 4(f)").